UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT CHATTANOOGA

| | | |
|---|---|---|
| KATHY B. GREEN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No. 1:08-CV-2 |
| v. | ) | |
| | ) | Edgar / Lee |
| MICHAEL J. ASTRUE, | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

## REPORT AND RECOMMENDATION

This action was instituted by the Plaintiff Kathy B. Green ("Plaintiff") pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) seeking judicial review of the final decision of the Commissioner of Social Security ("Commissioner" or "Defendant") denying the Plaintiff a period of disability and disability insurance benefits ("DIB") under Title II of the Social Security Act, 42 U.S.C. §§ 416(i), 423 ("the Act"). This matter was referred to the undersigned pursuant to 28 U.S.C. § 636(b) and Rule 72(b) of the Federal Rules of Civil Procedure for a report and recommendation regarding the disposition of Plaintiff's motion for summary judgment [Doc. 10] and Defendant's motion for summary judgment [Doc. 12].

For the reasons stated herein, I **RECOMMEND** that: (1) Plaintiff's motion for summary judgment [Doc. 10] be **DENIED**; (2) Defendant's motion for summary judgment [Doc. 12] be **GRANTED**; (3) the decision of Commissioner be **AFFIRMED**; and (4) this action be **DISMISSED**.

## Administrative Proceedings

Plaintiff filed an application for DIB on January 6, 2005, alleging she became disabled on April 29, 2004 (Tr. 44-48). After her application was denied initially and on reconsideration,

Plaintiff requested a hearing before an ALJ (Tr. 27, 29-34), alleging she was unable to work due to problems with her left upper extremity, back and neck pain, and bipolar disorder (Tr. 98). Following a hearing on August 31, 2006 (Tr. 547-62), the ALJ issued a decision on October 10, 2006, finding Plaintiff was not disabled because she retained the residual functional capacity ("RFC") to perform her past relevant work as a cashier, engineering clerk, records clerk, and receptionist (Tr. 11-24). The ALJ's decision became the final decision of the Commissioner on November 30, 2007, when the Appeals Council denied Plaintiff's request for review of the ALJ's decision (Tr. 5-7).

## **Standard of Review**

The Court must determine whether the ALJ failed to apply the correct legal standard and whether the ALJ's findings of fact were unsupported by substantial evidence. 42 U.S.C. § 405(g); *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). "This Court must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standards or has made findings of fact unsupported by substantial evidence in the record." *Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 390 (6th Cir. 2004) (quoting *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997)). If there is substantial evidence to support the Commissioner's findings, they should be affirmed, even if the Court might have decided facts differently, or if substantial evidence also would have supported other findings. *Smith v. Chater*, 99 F.3d 780, 782 (6th Cir. 1996); *Ross v. Richardson*, 440 F.2d 690, 691 (6th Cir. 1971). The Court may not re-weigh the evidence and substitute its own judgment for that of the Commissioner merely because substantial evidence exists in the record to support a different conclusion. The substantial evidence standard allows considerable latitude to administrative decisionmakers because it presupposes there is a zone of choice within which the decisionmakers can go either way, without interference by the courts. *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994) (citing *Mullen v. Bowen*, 800 F.2d 535,

2

548 (6th Cir. 1986)); *Crisp v. Sec'y of Health & Human Servs.*, 790 F.2d 450, 453 n.4 (6th Cir. 1986). The Court may consider any evidence in the record, regardless of whether it has been cited by the ALJ. *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001). The Court of Appeals for the Sixth Circuit ("Sixth Circuit") has held that substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Garner*, 745 F.2d at 388 (citation omitted).

## How Disability Benefits Are Determined

The Sixth Circuit recently reiterated the five-step procedure used by the Social Security Administration ("SSA") to determine eligibility for disability benefits as follows:

> The [Social Security] Act entitles to benefits payments certain claimants who, by virtue of a medically determinable physical or mental impairment of at least a year's expected duration, cannot engage in "substantial gainful activity." 42 U.S.C. § 423(d)(1)(A). Such claimants qualify as "disabled." *Id.* A claimant qualifies as disabled if she cannot, in light of her age, education, and work experience, "engage in any other kind of substantial gainful work which exists in the national economy." *Id.* § 423(d)(2)(A). To identify claimants who satisfy this definition of disability, the SSA uses a five-step "sequential evaluation process." 20 C.F.R § 404.1520(a)(4). The five steps are as follows:
>
> In step one, the SSA identifies claimants who "are doing substantial gainful activity" and concludes that these claimants are not disabled. *Id.* § 404.1520(a)(4)(i). If claimants get past this step, the SSA at step two considers the "medical severity" of claimants' impairments, particularly whether such impairments have lasted or will last for at least twelve months. *Id.* § 404.1520(a)(4)(ii). Claimants with impairments of insufficient duration are not disabled. *See id.* Those with impairments that have lasted or will last at least twelve months proceed to step three.
>
> At step three, the SSA examines the severity of claimants' impairments but with a view not solely to their duration but also to the degree of affliction imposed. *Id.* § 404.1520(a)(4)(iii). Claimants are conclusively presumed to be disabled if they suffer from an infirmity that appears on the SSA's special list of impairments, or that

3

is at least equal in severity to those listed. *Id.* § 404.1520(a)(4)(iii), (d). The list identifies and defines impairments that are of sufficient severity as to prevent any gainful activity. *See Sullivan v. Zebley,* 493 U.S. 521, 532, 110 S.Ct. 885, 107 L.Ed.2d 967 (1990). A person with such an impairment or an equivalent, consequently, necessarily satisfies the statutory definition of disability. For such claimants, the process ends at step three. Claimants with lesser impairments proceed to step four.

In the fourth step, the SSA evaluates claimants' "residual functional capacity," defined as "the most [the claimant] can still do despite [her] limitations." 20 C.F.R. § 404.1545(a)(1). Claimants whose residual functional capacity permits them to perform their "past relevant work" are not disabled. *Id.* § 404.1520(a)(4)(iv), (f). "Past relevant work" is defined as work claimants have done within the past fifteen years that is "substantial gainful activity" and that lasted long enough for the claimant to learn to do it. *Id.* § 404.1560(b)(1). Claimants who can still do their past relevant work are not disabled. Those who cannot do their past relevant work proceed to the fifth step, in which the SSA determines whether claimants, in light of their residual functional capacity, age, education, and work experience, can perform "substantial gainful activity" other than their past relevant work. *See id.* § 404.1520(a)(4)(v), (g)(1). Claimants who can perform such work are not disabled. *See id.;* § 404.1560(c)(1). The SSA bears the burden of proof at step five. *See Jones v. Comm'r of Soc. Sec.,* 336 F.3d 469, 474 (6th Cir. 2003).

*Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 642-43 (6th Cir. 2006).

## ALJ's Findings

The ALJ made the following findings in support of Commissioner's decision, which are conclusive if they are supported by substantial evidence in the record:

1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2009.

2. The claimant has not engaged in substantial gainful activity since April 29, 2004, the alleged onset date . . . .

3. The claimant has the following severe impairments: degenerative disk disease and affective [disorder] . . . .

4. The claimant does not have an impairment or combination of

impairments that meets or medically equals one of the listed impairments . . . .

5.　　　　. . . the claimant has the residual functional capacity to sit about six hours, stand/walk about six hours, and lift 20 pounds occasionally and ten pounds frequently.

6.　　　　The claimant is capable of performing past relevant work as a cashier, engineering clerk, records clerk, and receptionist. This work does not require the performance of work-related activities precluded by the claimant's residual functional capacity.

7.　　　　The claimant has not been under a "disability," as defined in the Social Security Act, from April 29, 2004 through the date of this decision . . . .

(Tr. 16-17, 20).

## Issues

The issues, as presented by Plainitff, are:

I:　　　　Whether the ALJ erred by failing to find Plaintiff satisfied certain specific listings.

II.　　　　Whether the ALJ erred in not finding Plaintiff disabled even if she did not meet a listing or listings.

[Doc.11 at 3].

## Review of Evidence

**A.　　Plaintiff's Age, Education, and Past Work Experience**

Plaintiff was fifty years of age at the time of the ALJ's decision (Tr. 44). She has a high school education and some college education. Her past relevant work includes jobs as a cashier, engineering clerk, records clerk, and receptionist (Tr. 71-78, 549).

**B.　　Medical Evidence**

As the briefs of the parties show there is no significant dispute between the parties as to the medical evidence in the administrative record or the ALJ's summarization of that evidence, only the

5

most relevant evidence will be discussed in this report and recommendation.

Vijai P. Sharma, Ph. D. performed a psychological evaluation of the Plaintiff at the request of the state agency on May 4, 2005 (Tr. 269-276). Dr. Sharma's evaluation consisted of a structured clinical interview and a mental status examination (Tr. 269). Dr. Sharma's diagnosis was bipolar disorder, most recent episode depressed, mild (Tr. 276). Dr. Sharma stated Plaintiff did not display cognitive limitations, her ability to learn did not appear to be impaired, and her ability to attend and concentrate was measured as fair to good throughout the assessment (*id.*). He stated her ability to interact socially did not appear significantly limited, but her ability to deal with unexpected problems and events was limited due to stressors from family members having terminal illnesses combined with her inability to afford treatment or medication at the time of the examination (*id.*).

Tom Neilson, Psy. D. completed a psychiatric review technique form ("PRTF") on May 22, 2005 (Tr. 277-290). Dr. Neilson indicated Plaintiff had an affective disorder corresponding to listing 12.04 (Tr. 277, 280); however, he did not indicate Plaintiff had an anxiety related disorder corresponding to listing 12.06 (Tr. 277, 282). Dr. Neilson further indicated Plaintiff's mental limitation/impairment did not satisfy the "B" criteria of the listings (Tr. 287) and there was no evidence showing that Plaintiff's mental limitation/impairment satisfied the "C" criteria of the listings (Tr. 288).

William A. Holland, M.D. performed a consultative examination of Plaintiff on May 24, 2005, at the request of the state agency (Tr. 295). Plaintiff told Dr. Holland she had neck pain that radiated into her left arm; she was having numbness and tingling in the left fifth and sixth fingers, which was now resolved; was having pain in her left shoulder with range of motion; and was having occasional weakness in the left hand (*id.*). Dr. Holland found Plaintiff complained of pain in the left shoulder with forward flexion and abduction to 140 degrees; had no evidence of atrophy about the

6

left upper arm or forearm; normal range of motion at the elbows, wrists and hands; 5/5 grip strength bilaterally; negative straight leg raise; no scoliosis or spasm; and normal station and gait, including tandem, toe and heel walking (Tr. 297). Dr. Holland's assessment was a history of neck pain radiating into the left arm and low back pain (*id.*). Dr. Holland stated he would assign no physical limitations based upon his examination of Plaintiff (*id.*).

Dr. William L. Downey completed an assessment of Plaintiff's RFC on June 8, 2005, at the request of the state agency (Tr. 299-306). Dr. Downey indicated Plaintiff could lift and/or carry 50 pounds occasionally, 25 pounds frequently, stand and/or walk, with normal breaks, for a total of about six hours in an eight-hour workday; and sit, with normal breaks, for about six hours in an eight hour workday (Tr. 300).

## C. Hearing Testimony

### 1. Plaintiff

Plaintiff, who was 50 years old at the time of the hearing (Tr. 549), testified as follows: she has not worked since April 29, 2004, except for an attempt to work in July 2004, which lasted less than two weeks (Tr. 550). She worked at Advanced Auto Parts from 1998 to 2004 as a detailer (*id.*). Detailers set up in-store displays, stock shelves and put away merchandise when it comes into the store (Tr. 551). The heaviest thing she lifted as a detailer weighed 50 or 60 pounds (*id.*). Prior to that she was a produce clerk at Sam's Club (*id.*). As a produce clerk, she put away merchandise when it came in, put out the displays, put fresh produce out, and removed bad produce (Tr. 552). As a produce clerk, Plaintiff lifted anywhere from a 5-pound bag of apples to a 50-pound bag of onions (*id.*). She worked at Sam's Club for over two years (*id.*). Plaintiff worked at Four Yarns for 17 years as a machine operator and then she moved up to a position as a payroll clerk (*id.*).

As of April 29, 2004, her problems had been building up and reached the point where she

7

could not work anymore (*id.*). She went to the doctor and he wanted to put her in the hospital for extreme fatigue and severe depression (Tr. 552-53). Plaintiff stated her symptoms of a herniated disc and depression kept building up and the muscles in her back and neck would knot up and not release, making her muscle spasms worse (Tr. 553).

Plaintiff has very little use of her left arm as the result of numbness and tingling from the problems in her neck (*id.*). Plaintiff cannot make a fist with her hand, and sometimes the last three fingers of her left hand go numb and throb like a toothache (*id.*). Plaintiff also has a herniated disc in her lower back, but it does not cause her as much of a problem as her neck (Tr. 554). When her lower back acts up, she goes numb down the back of her leg all the way to her foot and she uses a cane when this happens (*id.*). She stated she has problems with her lower back every month or two (*id.*). Plaintiff experiences constant tightening of the muscles in her back and neck and she has practically no strength in her left arm (Tr. 555). She does not engage in a lot of activities (*id.*). Plaintiff can sit for 15 to 20 minutes at a time before she has to get up and change position (*id.*). She estimated she can stand for ten to 15 minutes and can walk for less than a quarter of a mile and does not do well at all with lifting (*id.*).

Plaintiff stated she takes over the counter medications such as Goody's powders and Tylenol Arthritis to relieve her pain as well as warm baths with Epsom salts (Tr. 557). Plaintiff needs to rest daily – anywhere from half an hour to all afternoon – because of her pain (*id.*).

Plaintiff has also received treatment for depression and bipolar disorder (Tr. 558). Plaintiff's depression gets really bad because of her pain and inability to work (*id.*).

### 2. Vocational Expert

Jane Colvin Roberson, the vocational expert ("VE") at the hearing, testifed as follows: Plaintiff's work as a detailer actually involved work as a cashier and a stock clerk (Tr. 559). The

cashier part of the job was light work with specific vocational preparation ("SVP") of three and the stock clerk part of the job was heavy work with an SVP of four (*id.*). Plaintiff worked as an engineering clerk for two years which was light, semi-skilled work with an SVP of three (Tr. 560). Plaintiff worked as a machine operator in the textile industry which was semi-skilled, medium work with an SVP of three (*id.*). Plaintiff's work as a produce clerk was unskilled, medium work with an SVP of two (*id.*). The VE further stated that Plaintiff spent two months working as a receptionist which was light work with an SVP of three and also worked as a secretary for six and one-half months, which was light, semi-skilled work with a SVP of three (*id.*). Although the aforementioned position had the title of secretary, as the Plaintiff described it, it was more like a general office clerk. Plaintiff worked for two months as a warehouse worker/order filler, which was unskilled, medium work with an SVP of two (*id.*).

In response to a hypothetical from Plaintiff's attorney involving a person of the same age, education and experience as the Plaintiff with the same physical restrictions as testified to by the Plaintiff, the VE also testified there were no positions such an individual would be able to perform (Tr. 560-61). If Plaintiff's testimony were accepted, there would be no jobs she could perform based upon her need to alternate positions frequently, her need to lie down for over two to three hours after any activity, and her inability to grip and/or lift with her left hand/left upper extremity (Tr. 561).

### Analysis

#### A.    Listing of Impairments

For use at step three, the Commissioner has promulgated an extensive list of impairments. *See generally* 20 C.F.R. Part 404, Subpart P, Appx. 1 (2005). As a general rule, if the Plaintiff has an impairment that matches or is substantially equivalent to a listed impairment, the claimant is disabled *per se*. *Gambill v. Bowen*, 823 F.2d 1009, 1011 (6th Cir. 1987). It is a plaintiff's burden

to prove his or her impairments meet or medically equal a listed impairment. *See Bowen v. Yuckert*, 482 U.S. 137, 146 (1987). To do so, she must present specific medical findings that her impairment meets the applicable listing of impairments or present medical evidence that describes how her impairment is equivalent to a listed impairment. *Foster v. Halter,* 279 F.3d 348, 354 (6th Cir. 2001); *Land v. Sec'y of Health & Human Servs.,* 814 F.2d 241, 245 (6th Cir. 1986) (per curiam).

In order to meet the requirements of a listed impairment, a Plaintiff must meet all the elements of the listed impairment. *Hale v. Sec'y of Health & Human Servs.,* 816 F.2d 1078, 1083 (6th Cir. 1987) (per curiam) (citing *King v. Heckler*, 742 F.2d 968, 973 (6th Cir. 1984) (lack of evidence indicating the existence of all the requirements of a listing provides substantial evidence to support finding that claimant did not meet the listing)). "For a claimant to show that her impairment matches a listing, it must meet *all* of the specified medical criteria. An impairment that manifests only some of those criteria, no matter how severely, does not qualify." *Hicks v. Comm'r of Soc. Sec.*, 105 F. App'x 757, 761 (6th Cir. Jul. 27, 2004) (quoting *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990). Substantial evidence exists to support a finding that the claimant does *not* meet the listing if there is a lack of evidence indicating the existence of all of the requirements of a listed impairment. *Hale*, 816 F.2d at 1083. It is not sufficient to come close to meeting the requirements of a listing. *See Dorton v. Heckler*, 789 F.2d 363, 367 (6th Cir. 1986) (per curiam) (decision to deny benefits affirmed where medical evidence *almost* established a disability under listing).

Federal courts generally agree an ALJ should provide a sufficient explanation for his or her step three conclusion when making a disability determination. *See, e.g., Jones v. Barnhart*, 364 F.3d 501, 505 (3d Cir. 2004); *Scott v. Barnhart*, 297 F.3d 589, 595 (7th Cir. 2002); *Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996). The purpose of the ALJ's explanation is to facilitate meaningful judicial review of the administrative decision. *See, e.g., Jones*, 364 F.3d at 505; *Scott*, 297 F.3d at

10

595; *Clifton*, 79 F.3d at 1009. In *Bledsoe v. Barnhart*, 165 F. App'x 408, 410-11 (6th Cir. Jan. 31, 2006), Bledsoe challenged the adequacy of the ALJ's step three finding. The ALJ had found "'the medical evidence establishes that the claimant has "severe" impairments . . . , but that she does not have an impairment or *combination of impairments* listed in, or medically equal to the one listed in Appendix 1, Subpart P, Regulations No. 4.'" *Id.* (emphasis in original). The Sixth Circuit rejected Bledsoe's challenge to the sufficiency of the ALJ's finding, holding the ALJ did not err by not spelling out every consideration that went into the ALJ's step three analysis. *Id.* at 411. Rather, the Sixth Circuit stated:

> The language of 20 C.F.R. § 404.1526 does not state that the ALJ must articulate, at length, the analysis of the medical equivalency issue. It states that the ALJ should review all evidence of impairments to see if the sum of impairments is medically equivalent to a "listed impairment." This is exactly what the ALJ did. The ALJ described evidence pertaining to all impairments, both severe and non-severe, for five pages earlier in his opinion and made factual findings. The ALJ explicitly stated that he considered the combination of all impairments even though he did not spell out every fact a second time under the step three analysis.

*Id.* Thus, the Sixth Circuit held there is no heightened articulation standard applied to the step three analysis where substantial evidence supports the ALJ's findings. *Id.* (citing *Dorton v. Heckler*, 789 F.2d 363, 367 (6th Cir. 1986)).

The ALJ found Plaintiff did not have an impairment or combination of impairments that met or medically equaled any of the listed impairments. Specifically, the ALJ stated:

> Neither the clinical evidence nor the diagnostic images of record establish the presence of a spinal disorder that compromises a nerve root and results in motor loss or sensory or reflex loss, all of which are required to meet the criteria of listing 1.04. There is no evidence or medical opinion that suggests the claimant's affective disorder causes marked limitation in functioning or results in any of the C criterial to meet listing 12.04.

11

(Tr. 16).

With regard to the Plaintiff's mental impairments, the ALJ further stated in relevant part:

> Because the claimant had no current mental health records when she filed for disability, she was seen for a consultative psychological examination by Vijai Sharma, Ph. D., in May 2005 . . . Dr. Sharma assessed bipolar disorder, mild. He indicated the claimant displayed no signs of cognitive limitation. He assessed her ability to attend and concentrate as fair to good and her ability to interact socially as not significantly limited. Dr. Sharma indicated the claimant's ability to cope or deal with stressors was limited . . . .
> . . .
> I give determinative weight to the opinions of Dr. Sharma and the reviewing psychologist for the State agency, both of whom found moderate limitation in the claimant's ability to sustain concentration, persistence, and pace. Under other aspects of the B criteria of listing 12.04, the claimant has no more than mild difficulty completing daily activities or interacting appropriately socially and she has had no episodes of decompensation documented in the record. The C criteria of the listing are not in evidence. I find the claimant's moderate difficulty in maintaining concentration, persistence, and pace would reasonably prevent her from meeting the mental demands of skilled work activity, but it should not affect her ability to meet the mental demands [of] semiskilled or unskilled work activity.

(Tr. 18, 20).

### 1.    Listing 1.04

Plaintiff asserts she meets the requirements of listing 1.04, stating:

> the [ALJ] committed error by failing to find that she meets listing sections 1.04, Disorders of the Spine. The diagnoses concerning her spine include cervical and lumbar radiculopathy. Additionally her diagnoses include cervical herniated disc. Spinal disorder diagnoses also include muscle spasms. Further, diagnoses of disorders of the spine include herniated disc at L4/5. She has been diagnosed with degenerative joint disease of the spine. She has also been diagnosed with sciatica.

[Doc. 11 at 11](internal citations omitted).

Listing 1.04 states:

12

1.04 Disorders of the spine (e.g., herniated nucleus pulposus, spinal arachnoiditis, spinal stenosis, osteoarthritis, degenerative disc disease, facet arthritis, vertebral fracture), resulting in compromise of a nerve root (including the cauda equina) or the spinal cord. With:

A. Evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine);
or

B. Spinal arachnoiditis, confirmed by an operative note or pathology report of tissue biopsy, or by appropriate medically acceptable imaging, manifested by severe burning or painful dysesthesia, resulting in the need for changes in position or posture more than once every 2 hours;
or

C. Lumbar spinal stenosis resulting in pseudoclaudication, established by findings on appropriate medically acceptable imaging, manifested by chronic nonradicular pain and weakness, and resulting in inability to ambulate effectively, as defined in 1.00B2b.

20 C.F.R. Pt. 404, Subpt. P, App. 1.

Plaintiff has not claimed she has spinal arachnoiditis as required by subsection B of listing 1.04; nor has she alleged she has lumbar spinal stenosis as required by listing 1.04. With regard to subsection A of listing 1.04, which requires evidence of nerve root compression, Plaintiff asserts the nerve conduction studies performed on January 1, 2000 and January 31, 2002 confirm evidence of nerve root compression [Doc. 11 at 11](citing Tr. 182-83, 200).

The results of an upper extremity electromyelogram ("EMG") conducted on February 1, 2000 were interpreted by Herman Gore, M.D. as being: (1) Normal Median nerve conduction study, (2) Normal Ulnar nerve conduction study and (3) Normal EMG (Tr. 200). Dr. Gore's impression was: (1) No electrodiagnostic evidence of an acute radiculopathy but did note some re-innervation

13

potentials at C5 and C6; (2) No electrodiagnositc evidence of myopathy; (3) No electrodiagnostic evidence of carpal tunnel syndrome; (4) No electrodiagnostic evidence of ulnar neuropathy; and (5) No electrodiagnostic evidence of peripheral neuropathy (*id.*).

Dr. Gore interpreted a second upper extremity EMG taken on January 31, 2002, as being a: (1) Normal Median nerve conduction study; (2) Normal Ulnar nerve conduction study; (3) Normal Radial nerve conduction study; and (4) Abnormal EMG (Tr. 183). Dr. Gore's electrodiagnostic impression was: (1) No electrodiagnostic evidence suggestive of an acute radiculopathy but does note to have some chronic reinnervation potentials suggesting a left chronic C5/C6 radiculopathy with reinnervation potentials in the left Cervical Paraspinals, Pronator Teres, and Biceps muscles; (2) No electrodiagnostic evidence of myopathy; (3) No electrodiagnostic evidence of carpal tunnel syndrome; (3) No electrodiagnostic evidence of ulnar neuropathy; and (4) No electrodiagnostic evidence of peripheral neuropathy (*id.*).

The ALJ discussed this evidence in his decision stating:

> The medical evidence of record establishes the claimant received treatment for neck and back pain from 1990 through 2003. Relevant information from this period when the claimant still worked includes MRI studies dated February 2002, that show a small central herniated disk at C5-6 with no associated cord compression or neural compromise and a small left herniated disk at L4-5 producing moderate neural foraminal compromise on the left. A cervical myelogram and CT scan from April 2002 showed very small disk bulging at C3-5 and a small herniated disk at C5-6 with no cord compression or neural foraminal compromise. An EMG study from the same period showed some chronic reinnervation potentials, suggesting a left chronic C5-6 radiculopathy.

(Tr. 17) (internal citations omitted).

Substantial evidence supports the ALJ's characterization of the EMG studies. Although the studies showed some re-innervation potential and *suggested* a left chronic C5/C6 radiculopathy, such

evidence does not rise to the level of a diagnosis of radiculopathy and does not show Plaintiff meets or equals the requirements of subsection A of listing 1.04.

Plaintiff also asserts her testimony was that the symptoms of her severe medically determinable disorders of the spine have persisted at least through August 31, 2006, the date of the hearing [Doc. 11 at 11]. To the extent Plaintiff is suggesting the ALJ should have found she met or equaled the requirements of listing 1.04 based upon her testimony concerning her subjective complaints, the ALJ found that Plaintiff's "statements concerning the intensity, persistence and limiting effects of [her] symptoms are not entirely credible." (Tr. 17). Plaintiff has not challenged the ALJ's credibility finding and, thus, has waived review of it. *See Yamin v. Comm'r of Soc. Sec.*, 67 F. App'x 883, 884 (6th Cir. 2003) (Where a Social Security claimant does not raise an issue before the district court it is deemed waived).

Thus, the ALJ did not err in finding Plaintiff did not meet or equal the requirements of listing 1.04.

### 2. Listings 12.04 and 12.06

Plaintiff also asserts she meets "listing sections 12.04, Affective Disorders and/or 12.06, Anxiety Related Disorders." [Doc. 11 at 13]. Plaintiff does not, however, cite to any criteria of either listing 12.04 or 12.06 as a basis for her assertion of error, nor does she make any more specific assertion of error.

Listing 12.04 states:

> 12.04 Affective Disorders: Characterized by a disturbance of mood, accompanied by a full or partial manic or depressive syndrome. Mood refers to a prolonged emotion that colors the whole psychic life; it generally involves either depression or elation.
>
> The required level of severity for these disorders is met when the requirements in both A and B are satisfied, or when the requirements

in C are satisfied.

A. Medically documented persistence, either continuous or intermittent, of one of the following:

1. Depressive syndrome characterized by at least four of the following:

a. Anhedonia or pervasive loss of interest in almost all activities; or

b. Appetite disturbance with change in weight; or

c. Sleep disturbance; or

d. Psychomotor agitation or retardation; or

e. Decreased energy; or

f. Feelings of guilt or worthlessness; or

g. Difficulty concentrating or thinking; or

h. Thoughts of suicide; or

i. Hallucinations, delusions or paranoid thinking; or

2. Manic syndrome characterized by at least three of the following:

a. Hyperactivity; or

b. Pressure of speech; or

c. Flight of ideas; or

d. Inflated self-esteem; or

e. Decreased need for sleep; or

f. Easy distractibility; or

g. Involvement in activities that have a high probability of painful consequences which are not recognized; or

h. Hallucinations, delusions or paranoid thinking;

16

Or

3. Bipolar syndrome with a history of episodic periods manifested by the full symptomatic picture of both manic and depressive syndromes (and currently characterized by either or both syndromes);

And

B. Resulting in at least two of the following:

1. Marked restriction of activities of daily living; or

2. Marked difficulties in maintaining social functioning; or

3. Marked difficulties in maintaining concentration, persistence, or pace; or

4. Repeated episodes of decompensation, each of extended duration;

Or

C. Medically documented history of a chronic affective disorder of at least 2 years' duration that has caused more than a minimal limitation of ability to do basic work activities, with symptoms or signs currently attenuated by medication or psychosocial support, and one of the following:

1. Repeated episodes of decompensation, each of extended duration; or

2. A residual disease process that has resulted in such marginal adjustment that even a minimal increase in mental demands or change in the environment would be predicted to cause the individual to decompensate; or

3. Current history of 1 or more years' inability to function outside a highly supportive living arrangement, with an indication of continued need for such an arrangement.

20 C.F.R. Pt. 404, Subpt. P, App. 1, Listing 12.04.

Listing 12.06 states:

12.06 Anxiety Related Disorders: In these disorders anxiety is either the predominant disturbance or it is experienced if the individual

17

attempts to master symptoms; for example, confronting the dreaded object or situation in a phobic disorder or resisting the obsessions or compulsions in obsessive compulsive disorders.

The required level of severity for these disorders is met when the requirements in both A and B are satisfied, or when the requirements in both A and C are satisfied.

A. Medically documented findings of at least one of the following:

1. Generalized persistent anxiety accompanied by three out of four of the following signs or symptoms:

a. Motor tension; or

b. Autonomic hyperactivity; or

c. Apprehensive expectation; or

d. Vigilance and scanning;

Or

2. A persistent irrational fear of a specific object, activity, or situation which results in a compelling desire to avoid the dreaded object, activity, or situation; or

3. Recurrent severe panic attacks manifested by a sudden unpredictable onset of intense apprehension, fear, terror and sense of impending doom occurring on the average of at least once a week; or

4. Recurrent obsessions or compulsions which are a source of marked distress; or

5. Recurrent and intrusive recollections of a traumatic experience, which are a source of marked distress;

And

B. Resulting in at least two of the following:

1. Marked restriction of activities of daily living; or

2. Marked difficulties in maintaining social functioning; or

18

3. Marked difficulties in maintaining concentration, persistence, or pace; or

4. Repeated episodes of decompensation, each of extended duration.

Or

C. Resulting in complete inability to function independently outside the area of one's home.

20 C.F.R. Pt. 404, Subpt. P, App. 1, Listing 12.06.

In his decision, the ALJ accorded determinative weight to the opinions of Drs. Sharma and Neilson (Tr. 20). Plaintiff has not challenged the weight accorded by the ALJ to the acceptable medical sources of record and, thus, has also waived review of that issue. *See Yamin*, 67 F. App'x at 884. In the PRTF he completed, Dr. Neilson specifically stated Plaintiff did not meet or equal the "B" criteria of listing 12.04. As set forth above, the "B" criteria of listing 12.06 is identical to the "B" criteria of listing 12.04.

Thus, I conclude substantial evidence, namely the PRTF completed by Dr. Neilson, supports that Plaintiff does not meet or equal the requirements of either listing 12.04 or listing 12.06.

**B. Other Assertions of Error**

**1. Combination of Impairments**

Plaintiff asserts the ALJ failed "to consider the combined adverse effect of the multiple severe medically determinable mental and physical impairments on her ability to engage in substantial gainful activity." [Doc. 11 at 13]. Plaintiff cites to 20 C.F.R. § 404.1523, which states in pertinent part:

> In determining whether your physical or mental impairments are of a sufficient medical severity that such impairment or impairments could be the basis of eligibility under the law, we will consider the combined effect of all of your impairments without regard to whether any such impairment, if considered separately, would be of sufficient

severity. If we do find a medically severe combination of impairments, the combined impact of the impairments will be considered throughout the disability determination process. . . .

Although Plaintiff asserts the ALJ failed to consider the combined adverse effect of her physical and mental impairments, the ALJ considered and discussed the combined effects of the Plaintiff's physical and mental impairments throughout his decision. At step three, the ALJ found that Plaintiff did "not have an impairment or combination of impairments" that met or medically equaled a listed impairment (Tr. 16). Further, in making his determination as to the Plaintiff's RFC, given her physical and mental impairments, the ALJ extensively discussed both the Plaintiff's physical and mental impairments (Tr. 17-20) and concluded that "[t]he evidence of the claimant's mental and physical impairments credibly supports a restriction from more than light, semiskilled work activity." (Tr. 20).

A district court can conclude an ALJ considered a plaintiff's impairments in combination where the decision itself suggests the ALJ did so. *Gooch v. Sec'y of Health & Human Servs.*, 833 F.2d 589, 591 (6th Cir. 1987), *cert. denied*, 484 U.S. 1075 (1988). "An ALJ's individual discussion of multiple impairments does not imply that he failed to consider the effect of the impairments in combination, where the ALJ specifically refers to a 'combination of impairments' in finding that the plaintiff does not meet the listings." *Loy v. Sec'y of Health and Human Servs.*, 901 F.2d 1306, 1310 (6th Cir. 1990).

Thus, contrary to Plaintiff's assertions, the plain language of the ALJ's decision shows he did not err in failing to consider her physical and mental impairments in combination.

## 2. The Sequential Evaluation

Plaintiff further asserts the ALJ "committed error by failing to follow the sequential evaluation of her claim." [Doc. 11 at 14]. More specifically, Plaintiff asserts that although the ALJ

asked the VE to summarize Plaintiff's past work activity, the ALJ erred:

> by failing to ask questions of the vocational expert as to whether or not the claimant can perform a significant number of other jobs. The only question asked by the vocational expert was whether or not a hypothetical person with the same work history, educational background and physical restrictions as testified to by the claimant could perform any jobs. The vocational expert testified that there would be no jobs which could be performed by the hypothetical person.

[Doc. 11 at 14].

The ALJ ended his analysis of the Plaintiff's claim for DIB at the fourth step of the sequential evaluation when he concluded the Plaintiff retained the RFC to perform her past relevant work. The ALJ did not proceed on to the fifth step of the sequential evaluation. An ALJ may make a finding of non-disability at step four of the sequential evaluation without any special vocational evidence. *Maple v. Sec'y of Health & Human Servs.*, No. 90-3939, 1991 WL 73239, * 2 (6th Cir. May 7, 1991). "[E]xpert vocational testimony is not required when a finding of non-disability is based on the claimant's ability to perform his past work." *Parker v. Sec' of Health & Human Servs.*, No. 90-2084, 1991 WL 100547, * 3 (6th Cir. June 11, 1991) (citing Smith v. Sec' of Health & Human Servs., 893 F.2d 106, 110 (6th Cir. 1989)). Vocational expert testimony is not required until the fifth step of the sequential evaluation. *D'Angelo v. Comm'r of Soc. Sec.*, 475 F. Supp. 2d 716, 724 (W.D. Mich., 2007) (citing *Banks v. Massanari*, 258 F.3d 820, 827 (8th Cir. 2001)).

Thus, the ALJ did not err at step four in failing to seek further testimony from the VE.

## Conclusion

Having reviewed the record in its entirety, particularly with regard to the claims of error asserted by the Plaintiff, I **FIND** the decision of the Commissioner denying DIB to the Plaintiff is supported by substantial evidence in the record and should be affirmed. For the reasons stated

above, I **RECOMMEND**[1]:

    (1)       Plaintiff's motion for summary judgment [Doc. 10] be **DENIED**;

    (2)       Defendant's motion for summary judgment [Doc. 12] be **GRANTED**;

    (3)       Judgment be entered pursuant to Rule 58 of the Federal Rules of Civil Procedure **AFFIRMING** the Commissioner's decision which denied benefits to the Plaintiff; and

    (4)       This action be **DISMISSED**.


s/Susan K. Lee
SUSAN K. LEE
UNITED STATES MAGISTRATE JUDGE

---

[1] Any objections to this report and recommendation must be served and filed within ten (10) days after service of a copy of this recommended disposition on the objecting party. Such objections must conform to the requirements of Rule 72(b) of the Federal Rules of Civil Procedure. Failure to file objections within the time specified waives the right to appeal the district court's order. *Thomas v. Arn*, 474 U.S. 140, 149 n.7 (1985). The district court need not provide *de novo* review where objections to this report and recommendation are frivolous, conclusive and general. *Mira v. Marshall*, 806 F.2d 636, 637 (6th Cir. 1986). Only specific objections are reserved for appellate review. *Smith v. Detroit Fed'n of Teachers*, 829 F.2d 1370, 1373 (6th Cir. 1987).

22